**UNITED STATES POSTAL SERVICE, Plaintiff,**

v.

**Harold Johnson O'BRIEN, doing business as, House and Senate Delivery Service, Defendant.**

**Civ. A. No. 85–3741.**

United States District Court, District of Columbia.

Aug. 29, 1986.

---

Maryann Clifford, Dept. of Justice, Washington, D.C., for plaintiff.

Anthony S. Murry, Washington, D.C., for defendant.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

Plaintiff brings this suit to permanently enjoin the defendant from delivering letters in violation of the Private Express Statutes and the United States Postal Service Regulations. 39 U.S.C. §§ 601–606, 18 U.S.C. §§ 1693–1699. 39 C.F.R. §§ 310, 320. Both parties have filed motions for summary judgment and plaintiff also moves to dismiss defendant's counterclaim. The gist of defendant's counterclaim alleges that plaintiff, without authority, is unlawfully and unconstitutionally utilizing the postal statutes to abrogate the defendant's rights and livelihood. After consideration of the motions, the oppositions thereto, and the record in this case, the Court concludes that the defendant's motion should be denied and the plaintiff's motion should be granted. Therefore, the Court will enjoin the defendant from continuing his delivery service in such a manner that violates the postal laws. This holding, however, does not interfere with the defendant's delivery service insofar as such enterprise conforms to the requisite restrictions.

## I

The Private Express Statutes essentially prohibit the delivery of letters by private entities across postal service routes without United States postage, and for compensation, unless the action falls within a limited range of exceptions. Most courier services operate under the suspension of the Private Express laws for extremely urgent letters. 39 C.F.R. § 320.6. Generally speaking, this suspension allows carriers to deliver letters if (1) the material arrives at the destination within a short period of time and would lose its value if not so delivered, or (2) there is a specified minimum charge for delivery. Clauson's Declaration ¶ 8. Although defendant's principal dispute appears to be that the Private Express Statutes are unconstitutional, he argues in the alternative that his activities comport with the suspension requirements. Defendant's Memorandum in Support of Cross-Motion for Summary Judgment (DSJ) at 4–5. Based on the record, and a reading of the regulations, the Court cannot agree.

## II

Defendant operates a courier service for profit, called House and Senate Delivery Service, whereby he delivers printed matter to Congressional offices in Washington, D.C. The letters delivered do not bear United States postage. Instead, defendant charges five cents per ounce for letters not individually addressed and twelve cents per ounce for those that are individually addressed. Defendant's Statement of Facts Not in Dispute (DSFND) ¶ 4. Defendant maintains that his service provides ready access for the public to the lawmakers through a low cost, efficient mail delivery service which, in his opinion, is superior to plaintiff's, costs less, and thereby provides a "benefit to the people". Answer, 3rd Defense, Exhibits A, B. Defendant sorts the materials to be delivered at 1026 6th Street, N.W., Washington, D.C., and transfers them to Capitol Hill the following day. Downs' Declaration (April 11th) ¶ 8, O'Brien's Declaration ¶ 2. As a result of his location, plaintiff concludes that defendant must, by necessity, cross United States postal routes when delivering letters to Capitol Hill.

Inspector Ronald Downs, responsible for monitoring compliance with the postal laws, investigated defendant's activities and uncovered numerous non-urgent material delivered by the defendant to Congressional offices.[1] Downs' Declaration (May

---

1. The exhibits submitted by plaintiff evidence such correspondence as discount coupons for sandwiches, 15% discount on picture frames and letters concerning bills before Congress but submitted when Congress was in recess or well in advance of any vote on the applicable sub-

28th) ¶¶ 7, 10. The gravaman of plaintiff's claim is that the defendant is delivering material that is patently not urgent and as a consequence is violating the Private Express Statutes. Defendant asserts that his business practices conform to the requirements of the suspension for extremely urgent letters. DCFND ¶ 7. He submits declarations which arguably reflect that urgent materials are delivered by defendant in individual circumstances. O'Brien's Declaration ¶ 3, Coats' Declaration ¶¶ 2, 3; Wilson's Declaration ¶¶ 2, 3; Hobson's Declaration ¶ 3, Zschau's Declaration ¶¶ 2, 3.

It is uncontroverted that the defendant carries his delivery material in envelopes marked "extremely urgent". Additionally, by his own words, he does his best to have letters delivered by 10:00 a.m. of the addressee's next business day. O'Brien's Declaration ¶ 4. A thorough reading of the regulations, however, reveals that more than these two requirements is necessary for compliance.[2]

### III

The facts of this case do not suggest that the parties are arguing the applicability of the suspension portion which conclusively presumes that a letter is extremely urgent, if the amount paid for private carriage is at least three dollars or twice the applicable United States postage for First-Class Mail, whichever is greater. 39 C.F.R. § 320.6(c). Instead, the regulation relevant to delivery within a short time frame is applicable. "The suspension is available only if the value or usefulness of the letter would be lost or greatly diminished if it is not delivered within these time limits. For any part of a shipment of letters to qualify under

this paragraph (b), each of the letters *must be urgent.*" 39 C.F.R. § 320.6(b)(1) (emphasis added by the Court). Therefore, defendant in this case is violating the terms of the suspension if any portion of his delivery materials is not extremely urgent, as that term is defined by the Postal Service.

Defendant contends that plaintiff has utterly failed to demonstrate that he does *not* deliver extremely urgent items even though it is arguable that, at times, he may have delivered non-urgent material. Defendant's Reply at 4. Further, he admits that the material he delivers varies widely, although the majority is material that his clients need to have delivered quickly. O'Brien's Declaration ¶ 3. Defendant's averments miss the point. That the defendant sometimes delivers extremely urgent material is not a material fact in dispute. The dispositive issue is whether defendant has ever delivered non-urgent materials and thereby does not comply with the suspension guidelines. Stamping the envelope "extremely urgent" does not conclusively prove that the letters inside are urgent under the Postal Service standards. Nor does the fact that some clients consider their letters urgent, ipso facto exculpate defendant. Such sophistical reasoning does not sufficiently controvert plaintiff's evidence which on its face affirms that non-urgent material is delivered.

Since the defendant has delivered letters which do not comport with the Postal Service's definition of extremely urgent, plaintiff's motion, seeking to enjoin defendant from such activity is justified.[3] After re-

---

jects. Downs' Declaration (May 29, 1986), Exhibits C–I.

2. Charles Clauson, Chief Inspector of the Postal Inspection Service, reports that when the Postal Service promulgated the extremely urgent letters suspension in 1979, the Inspection Service began an education and monitoring program concerning the suspension to promote voluntary compliance. Information sent to couriers noted that under the regulation guidelines, a letter is considered extremely urgent only when its value or usefulness would be lost or greatly dimin-

ished if not delivered within certain periods of time or, alternatively, because the cost paid for private carriage gives rise to a conclusive presumption of urgency. Clauson's Declaration, Exhibit A.

3. The Court is mindful that a civil action against defendant is not the only appropriate recourse. Violations by carriers may result in administrative revocation of the suspension for a period on one year. *See* 39 C.F.R. § 320.6(e) (Determinations by Judicial Officer Department). Revocation of the suspension does not limit other ac-

solving this issue, the Court must address defendant's allegation of selective prosecution and unconstitutionality.

## IV

■ Defendant advances three additional rationales to set aside this action: (1) The Private Express Statutes are unconstitutional in general; (2) they are unconstitutional as applied to defendant because they unlawfully burden the right of clients to petition the Congress for redress of grievances; (3) this suit was instigated in an attempt to punish defendant for exercising his First Amendment rights. The Court concludes that all three arguments are without merit.

The constitutionality of the postal monopoly has been challenged rarely and never successfully. *United States Postal Service v. Brennan*, 574 F.2d 712, 715 (2nd Cir.1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1018, 59 L.Ed.2d 73 (1979). Defendant maintains that the courts sustaining the general constitutionality of the postal monopoly did so on purely policy justifications and therefore are not persuasive. DSJ at 8. However, the defendant fails to cite persuasive caselaw to the contrary.

The Private Express Statutes are nine groups of statutes which create the postal monopoly and set forth the conditions under which private persons may carry letters. *See Associated Third Class Mail Users v. United States Postal Service*, 600 F.2d 824 (D.C.Cir.), *cert. denied*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979); *Ex Parte Jackson*, 96 U.S. 727, 6 Otto 727, 24 L.Ed. 877 (1878). Others have argued, as does this defendant, that the statutes are not necessary and proper and represent an unlawful monopoly infringing a myriad of constitutional rights. Such arguments have not persuaded the courts to declare the statutes unconstitutional. *United States v. Black*, 569 F.2d 1111 (10th Cir. 1978), *cert. denied*, 439 U.S. 1115, 98 S.Ct. 1525, 55 L.Ed.2d 541 (1979); *Brennan, su-*

*pra; National Association of Letter Carriers v. Independent Postal System, Inc.* 470 F.2d 265 (10th Cir.1972). The propositions suggested by the defendant are at odds with judicial precedent.

The Constitution grants Congress the power to enact laws it deems necessary and proper to execute its power to establish post offices. *Brennan, supra* at 714. There is nothing novel or unprecedented about a governmental monopoly. *Id.* This Court agrees with the *Brennan* court's reasoning when faced with the same issue defendant urges here; "[t]he presumption is powerful that such a far reaching dislocating construction as petitioner would now have us find ... was not uncovered by judges, lawyers, or scholars for (almost two hundred) years because it is not there." *Id.* at 718. The plain intent of the Private Express Statutes is that the United States shall have a lawful monopoly to deliver the mail. Nothing in defendant's arguments persuades this Court to hold otherwise.

## V

■ Additionally, defendant proposes that the Postal monopoly unlawfully burdens the right of his clients to petition Congress for redress of grievances. This alternative argument fares no better than the others. The Court need not address the relevant question of defendant's standing to raise such a claim because it is obvious that the Private Express Statutes do not bar a citizen's ability to communicate with Congress. Letters bearing proper United States postage are delivered to the Congressional mailroom three times a day. Downs' Declaration (May 28th) ¶ 12. Judge Parker, in *Associated Third Class Mail Users v. United States Postal Service*, 440 F.Supp. 1211, 1216 (D.D.C.1977), *aff'd*, 600 F.2d 824 (D.C.Cir), *cert. denied*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979), dismissed as speculative similar claims alleging that the Private Express

---

tions to enforce the law, such as administrative proceedings for collection of postage or civil or criminal action. Here, the Postal Service chose

to seek declaratory and injunctive relief in an attempt to force defendant to comply with the laws.

Statutes were unconstitutional and impermissibly burdened free speech. The restraint defendant asserts in the instant case is no less conjecturable.

## VI

Finally, defendant alleges that plaintiff instigated this action in an attempt to punish him for speaking out against the Postal Service. A selective prosecution claim is a legal issue entirely independent of defendant's guilt or innocence. *United States v. Washington,* 705 F.2d 489 (D.C.Cir.1983).

▇▇▇ The courts are in agreement that at a preliminary stage, selective prosecution claims must be "colorable". *United States v. Diggs,* 613 F.2d 988, 1003 (D.C. Cir.), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 838 (1980); *Attorney General v. Irish People, Inc.,* 684 F.2d 928, 932 (D.C.Cir), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). A defendant invoking a selective prosecution defense, even at the discovery stage must offer at least a colorable claim that (1) the prosecution was improperly motivated and, (2) that it was selective. *Irish People* at 932. Defendant asserts that he has demonstrated a basis for such a claim. The Court cannot agree.

Defendant's evidence does not raise an inference that the claim is more than frivolous. Portia Franklin, employed by Capitol Legal Foundation, simply states that she has never stamped an envelope, sent by courier, extremely urgent nor has she received a letter by messenger marked in such a manner. Florence Powers, also employed by the same foundation, defendant's counsel's workplace, conducted research at the request of defendant's counsel. She called twelve private mail couriers never identified to the Court and inquired about the restrictions on their services. Based on the "results" of this investigation defendant urges the Court to conclude that other violators exist but are not being prosecuted. Plaintiff's investigator, Ronald Downs, investigated thirty named delivery services and subsequently encouraged those violating the statutes to conform

their practices accordingly. It is difficult to postulate "selectivety" from the evidence submitted. Nor do the statements by Franklin and Powers raise genuine factual issues.

As to the "impermissible motive" prong, defendant cites only to his public statements against the Postal Service. Since it is defendant's burden to raise a "colorable" claim beyond the frivolous stage; based on the paucity of evidence on this issue, Court concludes that the claim is not tenable. Concluding that even one part of the two element test for selective prosecution fails, ends the inquiry.

## VII

Based upon the reasoning briefly set forth, the Court concludes that the challenged statutes are constitutional, generally, and specifically, as applied to the defendant. Furthermore, the Court concludes that defendant has violated the Private Express Statutes and the United States Postal Service regulations by delivering materials which are not "extremely urgent", as that term is defined in the regulations. Accordingly, defendant's motion for summary judgment will be denied, and plaintiff's motion for summary judgment and motion to dismiss defendant's counterclaim will be granted.

An appropriate order has been entered.

## ORDER

This comes before the Court on the plaintiff's motions for summary judgment and to dismiss the counterclaim filed by the defendant, and the defendant's motion for summary judgment. After giving careful consideration to the motions, the oppositions thereto, and the record in this case, the Court concludes, for the reasons set forth in the accompanying memorandum, that the defendant's motion should be denied and the plaintiff's motions should be granted. The Court further concludes that the defendant should be enjoined from continuing his delivery service in such a manner that violates the postal laws.

In view of the above, it is hereby

ORDERED that defendant's motion for summary judgment is denied, and it is further

ORDERED that the plaintiff's motions for summary judgment and to dismiss the defendant's counterclaim are granted, and it is further

ORDERED that the defendant's counterclaim is dismissed with prejudice, and it is further

ORDERED that the defendant, his agents, employees, and others acting in concert with him are permanently enjoined operating from acting in violation of the Private Express Statutes, and related regulations, specifically, 39 C.F.R. § 320.6, as is more fully set forth in the accompanying memorandum.